IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

RICHARD BRITTAIN,

    Defendant.

Case No. 21-20019-JAR-5

## MEMORANDUM AND ORDER

This matter is before the Court on pro se Defendant Richard Brittain's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and USSG Amendment 821/1B1.10 (Doc. 180), and Motion to Expand the Record and Add New Information to Existing Compassionate Release Motion (Doc. 201). The motions are fully briefed, and the Court is prepared to rule.[1] As described more fully below, the Court denies both motions.

**I.    Background**

On May 31, 2023, Defendant Richard Brittain pled guilty to one count of conspiracy to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C).

The Presentence Investigation Report ("PSR") determined that Defendant was involved in four drug transactions, and in an effort to provide a drug estimate that is most advantageous to him, it only included as "ice" the amounts that were tested for purity. As a result, the total converted drug weight of 17,078.38 kg resulted in a base offense level of 34. With a total

---

[1] The Court has considered the parties' supplemental filings, including Defendant's medical records from the Bureau of Prisons ("BOP"), filed under seal. *See* Docs. 198, 200, 201.

offense level of 33 and a Criminal History Category of IV, Defendant's guideline range was 188–235 months' imprisonment. Under the statute, Defendant could have been sentenced to a maximum term of 20 years.

The Court imposed a sentence of 70 months' imprisonment after applying a departure and variance under 18 U.S.C. § 3553(a). The Court based its variance on Defendant's age, mental and emotional condition, and physical condition. The Court recommended placement at FCI Springfield so Defendant could be treated at a federal medical facility. Nonetheless, Defendant is currently incarcerated at FCI Fort Dix. He has a pending release date of March 21, 2026.[2]

## II.     Discussion

Section 3582(c)(1)(A), as amended by the First Step Act of 2018,[3] permits a court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before reducing a term of imprisonment under the compassionate release provision, a court must find that (1) "extraordinary and compelling reasons warrant" a sentence reduction, (2) such a reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support such a reduction.[4] The Court may deny a § 3582(c)(1)(A) motion "when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do[es] not

---

[2] Bureau of Prison ("BOP") staff has informed the Court that Defendant is being recommended for Residential Reentry Center ("RRC") placement on April 28, 2025, but it is still pending.

[3] Pub. L. No. 115-391, 132 Stat. 5194.

[4] 18 U.S.C. § 3582(c)(1)(A); *see United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

need to address the others."[5]  If the Court grants the motion, however, it must address all three steps.[6]

### A. Exhaustion

Exhaustion under § 3582(c)(1)(A) is a mandatory claim-processing rule that the Court must enforce when the government invokes it.[7]  Here, the government correctly notes in its response that Defendant failed to provide proof of exhaustion in his original motion.  Defendant then filed a "Rebuttal" that attached his administrative request to the Warden for compassionate release based on his medical conditions.[8]  The Court is satisfied that Defendant exhausted his administrative rights to appeal and proceeds to the merits.

### B. The Record

Because Defendant's motion is based on his serious medical conditions, the Court ordered the government to supplement the record twice—first, because no medical records were attached to the government's response, and second, because the initial supplementation was not up to date.  The government complied with both requests and the Court has reviewed these records.

The Court also ordered Defendant to supplement the record with a proposed release plan. He has not done so.  Instead, he filed a motion to expand the record.  In this motion, Plaintiff attaches several Federal Legal News articles for the Court to consider about prison conditions at BOP facilities.  The Court cannot and does not rest its decision on news reports, many of which

---

[5] *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021) (emphasis omitted) (quoting *McGee*, 992 F.3d at 1043).

[6] *McGee*, 992 F.3d at 1043 (quoting *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

[7] *See United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021).

[8] Doc. 186-1.

are not specific to Fort Dix. The Court confines its review to the medical records specific to Defendant. Thus, Defendant's motion to expand the record is denied.

## C.   Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) requires a district court to find that "extraordinary and compelling reasons warrant" a sentence reduction before it may grant the motion. The court has "the authority to determine for [itself] what constitutes 'extraordinary and compelling reasons.'"[9] That authority "is bounded by the requirement . . . that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission."[10]

On November 1, 2023, a new Sentencing Commission policy statement became effective that is "plainly applicable to motions for sentence reductions filed by either the Director of the Bureau of Prisons or a defendant."[11] The policy statement lists grounds that constitute extraordinary and compelling circumstances, and provides additional guidance for courts. The listed grounds are medical circumstances, age, family circumstances, whether the defendant was a victim of abuse while in custody, "other reasons," and whether the defendant served an "unusually long sentence."[12] Construing Defendant's pro se motion liberally, as the Court must,[13] he argues that his medical conditions, when considered together with his age and conditions of confinement, constitute extraordinary and compelling circumstances that warrant compassionate release.

---

[9] *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021).

[10] *Id.* at 832, 836–37.

[11] *United States v. Bradley*, 97 F.4th 1214, 1217 (10th Cir. 2024).

[12] U.S.S.G. § 1B1.13(b).

[13] *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[B]ecause [defendant] appears pro se, we must construe his arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

### 1.    Medical Conditions

Under U.S.S.G. § 1B.13(b)(1)(B) and (C), the Court may find extraordinary and compelling circumstances present if:

> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.[14]

Defendant argues that the combination of his age and myriad medical conditions has caused his physical and mental health to decline while in prison, and that he is unable to obtain the medical care he requires there. He has been prescribed several medications to help treat these conditions, but he asserts that the prison has refused to refill them for several months and that he has not received the specialized care he needs. The government concedes that Defendant suffers from serious physical or medical conditions, but argues that these conditions do not substantially diminish his ability to provide self-care within the correctional facility. The government asserts that the medical records demonstrate that he is receiving appropriate medical care.

---

[14] U.S.S.G. § 1B.13(b)(1)(B)–(C).

The Court has reviewed Defendant's medical records. They support his claim that he suffers from serious medical conditions. Defendant is 71 years old. Among several other ailments, Defendant suffers from Parkinson's disease, osteoarthritis in his right shoulder and left knee, bipolar disorder, chronic viral hepatitis C, urinary incontinence, and Chronic Obstructive Pulmonary Disease. His most recent medical records indicate that he is wheelchair bound, and he has been given steroid injections and ibuprofen for his osteoarthritis. He has been prescribed several medications for his conditions, including Imipramine and lithium carbonate. The government has submitted Defendant's Medication Administration Record through January 9, 2025, showing that he has been consistently provided with this medication. And Defendant has been referred to specialists for his Parkinson's Disease, osteoarthritis symptoms, and cardiac issues. As part of his care, he has received steroid injections to alleviate his osteoarthritis.

While the Court acknowledges that Defendant has several serious medical issues and requires specialized care, the record does not support his assertion that he is not receiving this care. While the medical records he submitted from last summer show that he had to make multiple requests for medication refills, the updated records from the BOP show that these were filled and administered. Thus, the Court cannot find that Defendant is not being provided with the specialized medical care he needs to avoid a serious deterioration in his health. Moreover, Defendant's BOP caseworker has represented to the Court that he has been recommended for RRC placement soon. In the face of no reentry plan, the Court cannot find that Defendant's medical conditions will be better treated with more specialized care if the Court grants him compassionate release.[15]

---

[15] *United States v. Allison*, No. CR16-5207RBL, 2020 WL 3077150, at *4 (W.D. Wash. June 10, 2020) ("An appropriate release plan is essential to ensure that a defendant actually has a safe place to live and access to health care in these difficult times. Shortening a defendant's sentence where there is no adequate release plan offers

### 2. Conditions of Confinement

Defendant argues that the conditions of his confinement at Fort Dix contribute to the extraordinary and compelling reasons for compassionate release. He cites poor conditions at this facility, including overcrowding, water contamination, asbestos, black mold, and exposure to health risks. He argues that the medical staff "does not address your needs at any reasonable level," which amounts to Fifth Amendment due process and Eighth Amendment cruel and unusual punishment violations.[16]

Generally, "a prisoner who challenges the conditions of his confinement must do so through a civil rights action."[17] Nonetheless, the Sentencing Commission's recent policy statement includes the following guidance on the degree to which conditions of confinement constitute extraordinary and compelling circumstances:

> (D) The defendant presents the following circumstances—
>
> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.[18]

---

no benefit to the health of the inmate and in the process likely further endangers the community into which the defendant is release.").

[16] Doc. 180 at 2.

[17] *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (citing *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997)).

[18] U.S.S.G. § 1B.13(b)(1)(D).

The policy statement makes clear that poor conditions of confinement must be specific to the defendant to constitute extraordinary and compelling circumstances.

None of the conditions of confinement cited by Defendant are specific to him; they are issues impacting all prisoners at Fort Dix. Crediting the generalized conditions recited in Defendant's motion would justify compassionate release for all prisoners at Fort Dix, and Defendant's assertions of constitutional violations are clearly challenges that must be raised in a civil rights action. Moreover, Defendant fails to demonstrate that there is "an ongoing outbreak of infectious disease, or . . . an ongoing public health emergency declared by the appropriate federal, state, or local authority" that would satisfy U.S.S.G. § 1B.13(b)(1)(D)(i). Accordingly, the conditions of confinement cited in Defendant's motion do not constitute extraordinary and compelling circumstances that justify compassionate release. To the extent Defendant argues that the medical staff does not address his medical needs—the only part of this claim that is specific to him—those assertions are not borne out by the record, as previously explained.

### D.   Section 3553(a) Factors

Assuming Defendant's medical conditions constitute extraordinary and compelling circumstances that justify compassionate release, the Court must consider the factors set forth in § 3553(a) in light of post-sentencing developments.[19] Those factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (3) "the need for the sentence imposed . . .

---

[19] *See Concepcion v. United States*, 597 U.S. 481, 486 (2022) ("[A] district court adjudicating a motion under the First Step Act may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion."); *Pepper v. United States*, 562 U.S. 476, 491 (2011) (stating that evidence of post-sentencing conduct "may be highly relevant" under § 3553(a)).

to afford adequate deterrence to criminal conduct"; (4) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[20]  "[T]he facts allegedly establishing extraordinary and compelling reasons for release . . . . are relevant to the § 3553(a) analysis."[21]

    Defendant was sentenced less than two years ago on a serious drug offense, and he was attributed with a large amount of methamphetamine as part of the relevant conduct that dictated his offense level.  Combined with a Criminal History Category of IV, Defendant faced a significant guideline range, even at the low end of 188 months.  Yet, the Court imposed a significant departure and variance, taking into account the same medical conditions that form the basis of his motion for compassionate release.  While the Court is mindful that its placement recommendation at a federal medical center was not followed after sentencing, the BOP is not required to do so.  The Court has carefully reviewed the medical records in this case and is satisfied that the staff at Fort Dix has provided Defendant with the medication and specialized medical care that his chronic conditions require.  And the Court is satisfied that granting this motion for compassionate release, despite Defendant's failure to provide any release plan, would not give Defendant a better medical outcome than he is currently facing while incarcerated.  This is particularly true given that he has a little over one year left on his term, and that he has been recommended for RRC placement in the near future.

    The Court finds that neither specific deterrence nor the need for the sentence imposed to protect the public weigh heavily in this case.  Defendant's medical issues would likely make it

---

[20] 18 U.S.C. § 3553(a).

[21] *United States v. Bradley*, 97 F.4th 1214, 1218 (10th Cir. 2024) (quoting *United States v. Hald*, 8 F.4th 932, 943 (10th Cir. 2021)).

difficult for him to recidivate upon release. But the general deterrence factor and the need to avoid unwarranted sentencing disparities do not weigh in favor of compassionate release given the already generous reduction in Defendant's term of imprisonment that takes into account his specific history and characteristics. The Court is hopeful that Defendant can spend the final year of his time in BOP custody working on a plan for his release that will allow him to maintain his medical care in a safe and law-abiding environment, and that he can take advantage of the medical care provided through the BOP in the interim.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Richard Brittain's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and USSG Amendment 821/1B1.10 (Doc. 180) is **denied**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant's Motion to Expand the Record and Add New Information to Existing Compassionate Release Motion (Doc. 201) is **denied**.

**IT IS SO ORDERED.**

Dated: February 27, 2025

S/ Julie A. Robinson  
JULIE A. ROBINSON  
UNITED STATES DISTRICT JUDGE